IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRADY SWANSON, )
 )
    Plaintiff, )
 )
v. ) Case No. 13-cv-748-TLW
 )
CAROLYN W. COLVIN, )
Acting Commissioner of )
 Social Security, )
 )
    Defendant. )

**OPINION AND ORDER**

Plaintiff Brady Swanson seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits and supplemental security income benefits under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 10). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**INTRODUCTION**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor

substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a forty-three year old male, applied for benefits under Title XVI on May 3, 2011, alleging a disability onset date of November 5, 2010. (R. 118-23). Plaintiff alleged that he was unable to work due to paranoia, panic attacks, and anxiety attacks. (R. 131). Plaintiff's claims for benefits were denied initially on June 14, 2011, and on reconsideration on August 26, 2011. (R. 66, 74-77; 69, 81-84). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on May 31, 2012. (R. 21-65). The ALJ issued a decision on July 18, 2012, denying benefits and finding plaintiff not disabled. (R. 8-20). The Appeals Council declined plaintiff's request to review the case, and plaintiff appealed. (R. 1-4; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed substantial gainful activity since his Title XVI application date of May 3, 2011. (R. 13). At step two, the ALJ found that plaintiff had the severe impairments of "[m]ajor depressive disorder, generalized anxiety disorder[,] and personality disorder." Id. He also found that plaintiff's Hepatitis C was a non-severe impairment. Id. The ALJ analyzed the "paragraph B" criteria for mental impairments, determining that plaintiff experienced mild restriction in activities of daily living, moderate limitation in social functioning, and mild difficulty in concentration, persistence, or pace. Plaintiff experienced no episodes of decompensation. (R. 13-14). At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment. (R. 13).

Next, the ALJ summarized plaintiff's medical records. Plaintiff received mental health treatment from January 2011 to April 2012 from Peteryne Miller, M.D. and Mr. Robert Blasdel, a therapist, at Grand Lake Mental Health Center, Inc. (R. 16-18, 183-216, 257-83, 285, 297-319, 320-22, 328-47). On intake, plaintiff reported symptoms of anxiety, depression, and paranoid ideation associated with his recent release from incarceration. (R. 16). Dr. Miller prescribed Lamotrigine, Buspirone, and Seroquel which improved plaintiff's symptoms. Id. Plaintiff reported doing things he "never thought [he would] be able to do," such as grocery shopping. Id. He also reported improved relationships with family members, looking for work, and attending church. Id.

Dr. Miller made various medication adjustments throughout plaintiff's treatment, and plaintiff reported that the medications worked well for him. Id. During a visit on February 14, 2012, Mr. Blasdel noted that plaintiff had a "moderate degree of psychosis and anxiety and a mild degree of depression." Id. On March 13, 2012, plaintiff's behavior was cooperative, mood euthymic, affect appropriate, and thought process normal. Id. Dr. Miller noted that plaintiff had average intelligence, fair judgment, no suicidal or homicidal ideations, and no medication side effects. Id.

The ALJ discussed plaintiff's GAF scores, which ranged from 43 to 51, and found that the scores were "of limited evidentiary value" because they were "subjectively assessed scores" that revealed "only snapshots of impaired and improved behavior." Id. The ALJ stated that he gave "more weight to the objective details and chronology of the record, which more accurately describe[d]" plaintiff's impairments and limitations. Id.

The ALJ noted that Dr. Miller completed a medical source statement "indicating that the claimant had marked limitations in all areas of mental functioning and that his impairments prevent him from being able to maintain consistent employment. (11F)." (R. 17). He then stated

3

that Dr. Miller's treatment records show "no indication that the claimant is markedly limited in the ability to understand and remember simple instructions." Id. The ALJ pointed out that on July 26, 2011, Dr. Miller said that plaintiff's memory was good, and that he could remember, comprehend, and carry out simple instructions. Id. He also cited Dr. Miller's March 13, 2012 notes, which indicate that plaintiff's thought process was normal, that he had average intelligence, and that his judgment was fair. Id. Further supporting Dr. Miller's March 2012 notes, the ALJ cited plaintiff's mother statement that although he "tends to get side tracked [plaintiff] can follow spoken instructions fairly well." Id.

The ALJ pointed out that records from February 14, 2012 show plaintiff "only has a moderate degree of psychosis and anxiety and a mild degree of depression," and that plaintiff "reported that Vistaril helped during times when he felt severely anxious and his paranoia was slightly less with medication." Id. The ALJ stated that he carefully considered Dr. Miller's opinion, but found that the opinion could not be given "great weight because it is in conflict with Miller's own treatment records, is not well supported by medically acceptable clinical and laboratory techniques, and is inconsistent with other substantial evidence as noted above." (R. 18).

After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand, remember, and carryout [sic] simple and some complex instructions and able to relate and interact with coworkers and supervisors on a work-related basis only with no or minimal interaction with the general public. The claimant can adapt to a work situation with these limitations/restrictions and his medications would not preclude him from remaining reasonably alert to perform required functions presented in a work setting.

(R. 15). At step four, the ALJ found that plaintiff was capable of performing his past relevant work as a "greenskeeper." (R. 18). Alternatively, at step five, the ALJ found that plaintiff could perform the jobs of industrial cleaner (medium exertion, SVP 2), housekeeping cleaner (light exertion, SVP 2), and touch-up screener (sedentary exertion, SVP 2). (R. 19-20). Therefore, the ALJ found plaintiff not disabled. (R. 20).

## ANALYSIS

On appeal, plaintiff raises three issues: (1) the ALJ failed to properly consider the treating physician's opinion; (2) the ALJ's credibility determination was faulty, and (3) the ALJ's RFC assessment is not supported by substantial evidence.[1] (Dkt. 20 at 3).

**Treating physician opinions**

Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. Peteryne Miller at Grand Lake Mental Health Center. (Dkt. 20). Specifically, plaintiff argues that the ALJ failed to explain "why he rejected some of the doctor's restrictions while adopting others," particularly arguing that the ALJ did not explain his "total rejection of the limitations relating to work pressures and interaction with coworkers and supervisors as set out by Dr. Miller and the state agency." Id. at 5. The Commissioner counters that the ALJ "gave sufficient and well-founded reasons for discounting [Dr. Miller's January 9, 2012] opinion," and that the regulations state that "no special significance is given to the source of an opinion on an issue reserved to the Commissioner." (Dkt. 21 at 3-4).

The proper procedure for evaluating the opinion of a treating physician is well established. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's

---

[1] Plaintiff does not develop an argument for this allegation of error, so it will not be considered by the Court. See (Dkt. 20 at 4-8).

5

opinion." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5). "The type of opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v. Barnhart, 183 Fed.Appx. 825, 827 (10th Cir. 2006) (unpublished). Generally, an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3d at 1300 (citing 20 C.F.R. § 404.1527(d)(2)). However, it is error to give the opinion controlling weight simply because it is provided by a treating source. Id.

In determining whether the opinion should be given controlling weight, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight" by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Id. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Second, if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, it is entitled to deference and must be evaluated in reference to the factors enumerated in 404.1527 and 416.927. Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

Third, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir.2007) (holding that an ALJ, in weighing a treating physician's opinion, need not analyze every factor, but must render a decision that is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.")

Here, the ALJ specifically noted that Dr. Miller had been plaintiff's physician since at least 2011 (factor one), noted the conditions Dr. Miller treated (factor two), and stated that the doctor's marked limitations were not supported by the record (factor three). (R. 17-18). Thus, the ALJ considered Dr. Miller's opinions and addressed three of the factors. In addition, the ALJ concluded that Dr. Miller's opinion regarding plaintiff's functional capacity was "in conflict with Miller's own treatment records, [was] not well supported by medically acceptable clinical and laboratory techniques, and [was] inconsistent with the other substantial evidence as noted above." (R. 18). Whether or not the Court agrees with this conclusion, it is supported by substantial evidence in the record as discussed by the ALJ, so it should not be disturbed on appeal. In addition, the ALJ's conclusion and discussion are sufficient to support his decision not to afford Dr. Miller's opinion controlling weight.

The ALJ also found Dr. Miller's opinions "inconsistent with the other substantial evidence as noted above [in the Decision]." This statement addresses the fourth factor which the ALJ could consider in determining whether to accord *any* weight to Dr. Miller's opinions. As mentioned above, the ALJ also addressed factors one, two, and three.

Plaintiff argues that the ALJ did not specifically weigh Dr. Miller's July 22, 2011 opinion that plaintiff's ability to respond to work pressures, supervision and coworkers was "poor at this time." (Dkt. 20, R. 285). But the ALJ did specifically limit plaintiff's ability to "relate and interact with coworkers and supervisors" to interaction only on a work-related basis. (R. 15).

Thus, the ALJ considered four of the factors used in determining the weight to be given Dr. Miller's opinions, and he accorded some weight to those opinions. Moreover, the ALJ included a lengthy and accurate discussion of the medical evidence and explained how that evidence differed from Dr. Miller's opinions. Therefore, there is no doubt that the ALJ's reasoning is "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to [those opinions]." Oldham, 509 F.3d at 1258.

**Credibility**

Plaintiff's second allegation of error is that the ALJ failed to perform a proper credibility analysis. (Dkt. 20 at 6). The Commissioner counters that plaintiff actually alleges that "the ALJ's interpretation of the facts is not supported by the evidence." (Dkt. 21 at 6).

"Credibility determinations are peculiarly the province of the finder of fact," and their determinations are not to be set aside "when supported by substantial evidence." Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, these findings "should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). If the ALJ identifies the specific evidence on which he or she relies, then this requirement is satisfied. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ is not

required to perform a "formalistic factor-by-factor recitation of the evidence." Id. Thus, the Tenth Circuit permits a court to apply a "common sense" approach to the review of an ALJ's credibility determination. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012). "Technical perfection" is not required. Id.

Plaintiff argues that the ALJ used boilerplate language in reaching his determination on plaintiff's credibility. (Dkt. 20 at 7). This is not the case. The ALJ tied his credibility analysis into his discussion of plaintiff's medical records, and used those records and other evidence to find plaintiff's claims not fully credible. See (R. 16-17). First, the ALJ noted plaintiff's consistent use of medication and that his symptoms "responded well" to therapy and medication, specifically noting plaintiff's own report that he "began 'to do things that a few weeks ago I would never thought I'd be able to do, such as going shopping at a grocery store.'" (R. 16). Despite testimony to the contrary at the hearing, the ALJ noted that plaintiff reported "getting along with his parents, spending time with his brother, looking for employment, and attending church." Id.

Further, the ALJ found that plaintiff's sporadic work history prior to his alleged onset date eroded his credibility, "rais[ing] the question as to whether the claimant's continuing unemployment [was] actually due to medical impairments." Id. The ALJ also noted that when asked about his work history during the hearing, plaintiff failed to admit that he did not work because he was in prison from 2000 to 2010, and "downplayed the seriousness of the first-degree burglary charges." Id. The ALJ also noted that as a condition of probation, plaintiff was expected to look for work, that he applied to only two places from 2010 to 2011, and that "filing for Social Security benefits relieved him from his obligation to look for a job." Id. The ALJ noted that plaintiff's mother supports him financially and that he helps his parents with yard work at rental properties that they own. The ALJ stated "[t]his evidence suggests a lack of motivation to find

work." (R. 16-17). The ALJ also relied on plaintiff's extensive criminal history in finding his credibility "highly suspect." (R. 17).

The ALJ discussed plaintiff's testimony and his mother's Third Party Function Report and found that the degree of plaintiff's alleged limited daily activities cannot be attributed to his "medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision." Id. The ALJ discounted plaintiff's mother's report as "no more than a parroting of the subjective complaints already testified to by the claimant. … The repetition of the claimant's subjective complaints through his mother does not make them any more credible." Id.

Therefore, substantial evidence supports the ALJ's credibility analysis. The undersigned finds no error with this issue.

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying plaintiff's claims for benefits is affirmed.

SO ORDERED this 30th day of March, 2015.

_____
T. Lane Wilson
United States Magistrate Judge